UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAR 30 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-72-GWU

CHARLIE D. COLLETT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff originally brought a civil action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). After two consent remands of the continuing appeal, and consolidation of proceedings involving additional subsequent benefit applications, the appeal is currently before the Court on cross-motions for summary judgment under the present civil action number.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

1

Collett

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of

Collett

fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

Collett

symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

Collett

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) who issued the latest final agency decision concluded that the plaintiff suffered from low back pain, degenerative disc disease, a depressive disorder, an anxiety disorder, and vasospastic angina. (Tr. 652). Nevertheless, he concluded that the plaintiff, while unable to perform past work, could perform a limited range of light level work which, based on vocational expert testimony, amounted to a significant number of jobs. (Tr. 652-653).

As far as the plaintiff's physical conditions were concerned, the record does not document many permanent restrictions for anything other than the musculoskeletal system. Rao Podapati set no limitations on the plaintiff after the episode of vasospastic angina (Tr. 358), and testing ruled out ischemia (Tr. 548). A

Collett

chest x-ray showed no active disease. (Tr. ). Moreover, despite any complaints of dyspnea as of 2000, it was indicated that he was still smoking cigarettes. (Tr. 552).

Essentially, one of the plaintiff's major arguments is that the ALJ failed to accord significant weight to the opinion of his treating physician, George Chaney, concerning the limitations afforded to his musculoskeletal injuries. However, there were significant reasons not to follow Chaney's assessment of the plaintiff's prior to his Date Last Insured in December, 2001–and these relate not only to information furnished by Chaney, but also information from the neurosurgeons to whom he referred the plaintiff. 1996 regular x-rays of the cervical and lumbar spine, taken after the plaintiff's first motor vehicle accident, were negative. (Tr. 375). MRIs done in 1996 showed no herniations. (Tr. 501-503). A 1997 bone scan was negative. (Tr. 228, 230). Another treating source, Neurosurgeon Greg Wheeler, proscribed only no heavy lifting, bending, twisting and high impact activities in late 1997. (Tr. 522).[1] A 1998 MRI of the lumbar spine was negative (Tr. 507). A myelogram done the same year was within normal limits in result and the plaintiff, who was said to ambulate well, was encouraged to be more active. (Tr. 527). As of mid-1998, George Chaney himself noted that the plaintiff was in no acute distress, his back appeared normal to inspection albeit with spasm, and that there was a full range of motion of

---

[1] While the plaintiff apparently did show up with a T3 fracture at this point, Treating Neurosurgeon Joseph Williams appeared to opine that this did not represent a neurosurgical problem. (Tr. 835).

8

Collett

the extremities. (Tr. 805). After another accident, a CT scan of the lumbar spine was within normal limits. As of April, 2006, Wheeler's colleague, Joseph Williams was reporting that "he had had MRIs of his brain, cervical spine and thoracic spine as well as complete myelogram and spinal fluid analysis. . .all of which has been negative. . .[and] We will send him back to Dr. Chaney saying that we cannot figure out why he had had these problems." (Tr. 835).[2]

The defendant's selection of mental factors for the hypothetical question was based on an opinion offered by Expert Witness Dixie Moore (Tr. 624), who saw treatment notes from Elmer Maggard and declared them to be not overly revealing as to the severity of the plaintiff's symptoms over the long term (Tr. 618, 623). She had also reviewed other evidence such as William Rigby's report (Tr. 623). This was sufficient to address Maggard's information.

The decision will be affirmed.

This the ___31___ day of March, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE

---

[2] While the plaintiff argues in his reply brief that he had established the existence of satisfaction of LOI Section 1.00et seq. criteria through Dr. Chaney's information, it is clear that nerve root compression with appropriate <u>related</u> physical findings were never clearly noted, and that arachnoiditis, or stenosis were never diagnosed. For these and other reasons noted in the defendant's brief at pp. 4-9, the plaintiff's arguments about the LOI are rejected.

9